IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GARY NELSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANHEUSER-BUSCH COMPANIES, INC., and ANHEUSER-BUSCH BREWING PROPERTIES LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 24-00029-GBW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Brian Warwick, Christopher J. Brochu, VARNELL & WARWICK, P.A., Tampa, FL; Matthew K. Handley, HANDLEY FARAH & ANDERSON PLLC, Washington, DC; William A. Anderson, HANDLEY FARAH & ANDERSON PLLC, Boulder, CO– attorneys for Plaintiff.

Jennifer C. Jauffret, Christine D. Haynes, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Richard L. Etter, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Pittsburgh, PA – attorneys for Defendants.

April 3, 2025
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

Plaintiff Gary Nelson ("Plaintiff" or "Nelson"), individually, and on behalf of all others similarly situated, brings this action against Anheuser-Busch Companies, Inc. and Anheuser-Busch Brewing Properties LLC (together, "Anheuser-Busch" or "Defendants"). Presently before the Court is Defendants' Motion to Compel Individual Arbitration and Stay or, in the alternative, to Dismiss the Case ("the Motion to Compel") (D.I. 21). Plaintiff filed an Answering Brief to the Motion to Compel (D.I. 26); and Defendants filed a Reply Brief (D.I. 28). For the reasons explained below, the Court grants Defendants' Motion to Compel.

## I.    BACKGROUND[1]

Anheuser-Busch is the largest beer manufacturer in the United States and is incorporated in Delaware. (D.I. 17 ¶ 3). Anheuser-Busch maintains and operates breweries in the United States. (*Id.*). Plaintiff Nelson was employed by Anheuser-Busch for over a decade and worked at four Anheuser-Busch breweries. (*Id.* ¶¶ 16-18). Nelson's primary duty was to "package beer and bottle beer on the bottling, canning, and keg lines." (*Id.* ¶18). Nelson alleges that, during his employment, he and "others with similar job duties and titles were classified by Anheuser-Busch as 'exempt' from the overtime provisions of [the Fair Labor Standards Act ("the FLSA")]." (*Id.* ¶19). Consequently, Nelson alleges that he "regularly worked more than forty hours in a workweek but was not paid for the majority of hours he worked over forty in a week even though he worked the same job as [nonexempt employees]." (*Id.* ¶ 25). Nelson claims that Anheuser-Busch violated the "FLSA by its failure to pay complete and proper overtime premiums for overtime hours worked by Plaintiff and others similarly situated." (*Id.* ¶ 33).

---

[1]    At this stage in the proceedings, the Court accepts all factual allegations in the Amended Complaint as true.  *See* Fed. R. Civ. P. 12(b)(6).

1

## II. PROCEDURAL POSTURE

On January 11, 2024, Plaintiff Nelson, individually, and on behalf of all others similarly situated, filed a Collective Action Complaint against Anheuser-Busch, LLC. (D.I. 1). On March 1, 2024, Anheuser-Busch, LLC filed a Motion to Transfer Venue or, alternatively, to Dismiss for Lack of Personal Jurisdiction. (D.I. 16). On March 15, 2024, Plaintiff filed his First Amended Complaint ("the Amended Complaint"). (D.I. 17). In the Amended Complaint, Plaintiff substituted Anheuser-Busch, LLC with Defendants Anheuser-Busch Companies, Inc. and Anheuser-Busch Brewing Properties LLC. (D.I. 17). Plaintiff asserts one cause of action: Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (*Id.* ¶¶ 53-68).

On April 15, 2024, Anheuser-Busch filed a Motion to Compel Individual Arbitration and Stay or, in the alternative, Dismiss the Case. (D.I. 21). The Motion to Compel asserts that Plaintiff agreed to an arbitration agreement, the "Dispute Resolution Program" ("the DRP"), with Defendants; thus, the Court should order Plaintiff to arbitrate his claims. (D.I. 22 at 6). The Motion to Compel also requests, in the alternative, that the Court dismiss the claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (*Id.*). On May 13, 2024, Plaintiff filed an Answering Brief. (D.I. 26). On May 28, 2024, Defendants filed their Reply Brief. (D.I. 28).

## III. LEGAL STANDARD

The Federal Arbitration Act ("the FAA") applies to arbitration provisions in "contracts evidencing a transaction involving [interstate] commerce."[2] 9 U.S.C. § 2. The FAA reflects a

---

[2] The Supreme Court has interpreted the term "involving commerce" to mean "affecting commerce" – "words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Here, Anheuser-Busch is engaged in interstate commerce because it ships

"national policy favoring arbitration." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). It "requires district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration." *James v. Global Tel\*Link Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (citing 9 U.S.C. § 3). A district court must stay judicial proceedings and compel arbitration if it determines that: (1) a valid arbitration agreement exists; and (2) the parties' dispute falls within the scope of the arbitration agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). First, to determine whether a valid arbitration agreement exists, the Court applies "state-law principles of contract formation" to decide if "the parties agreed to arbitrate." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599-600 (3d Cir. 2020). Second, to determine whether the dispute falls within the scope of the arbitration agreement, the Court examines the "breadth of the arbitration clause" and "the nature of the given claim." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014). The Court must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## IV. DISCUSSION

Defendants assert that the Court should compel arbitration because the DRP is a valid arbitration agreement, and Plaintiff's claim falls within the scope of the DRP. (D.I. 22 at 6). Defendants also assert that the parties "agreed to have threshold issues of applicability, formation, and enforceability determined by the arbitrator." (D.I. 28 at 11). Conversely, Plaintiff contends

---

products across state lines. (*See* D.I. 22 at 10). "Plaintiff and others similarly situated serve as the backbone of Anheuser-Busch, operating its assembly lines for bottling, canning, and kegs." (D.I. 17 ¶ 3). The DRP was referenced in and integrated into Nelson's employment contract. (D.I. 24, Ex. 1). As such, the contract before the Court evidences, or affects, a transaction involving interstate commerce. *See, e.g., Circuit City Stores v. Adams*, 532 U.S. 105 (2001) (holding that the FAA applies to an employment contract for a retail worker whose employer engages in interstate commerce).

3

that arbitration should not be compelled because his claim is excluded from arbitrable issues under the DRP. (D.I. 26 at 5). Plaintiff also contends that the parties did not delegate threshold issues to the arbitrator. (*Id.*). The Court addresses the parties' arguments below.

### A.   The Instant Dispute was not Delegated to the Arbitrator

As an initial matter, the Court must determine whether the parties have delegated the present dispute to the arbitrator. *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015) ("The Supreme Court has explained that where an arbitration agreement contains a delegation provision – committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable – the courts only retain jurisdiction to review a challenge to that specific provision.") (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)). In other words, the Court must decide *who* – either it or the arbitrator – is empowered to determine whether the agreement is enforceable and whether the dispute falls within the agreement's scope. The question of whether the parties have submitted a particular dispute to arbitration is referred to as "the question of arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). The question of arbitrability should be decided by the court, not the arbitrator, "[u]nless the parties clearly and unmistakably provide otherwise." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185-86 (2019) ("[W]e presume that parties have *not* authorized arbitrators to resolve certain 'gateway' questions . . . ."). If, however, the parties' contract clearly and unmistakably "delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Defendants contend that "[t]he parties agreed to have threshold issues of applicability, formation, and enforceability determined by the arbitrator." (D.I. 28 at 12). To support their argument, Defendants point to Article Thirteen of the DRP ("Article Thirteen"), which states:

4

> The Arbitrator shall have exclusive authority to resolve any dispute relating to the applicability, enforceability or formation of the DRP, including any claim that all or part of the DRP is invalid or unenforceable.

(D.I. 24, Ex. 2 at 18, art. 13).

Defendants assert that this language in the DRP constitutes a "clear and unmistakable delegation clause." (D.I. 28 at 12). Plaintiffs, however, argue that Article Thirteen does not clearly and unmistakably delegate the arbitrability issue because Article Thirteen is limited to "covered claims." (D.I. 26 at 15). Indeed, the section in which Article Thirteen appears, "Procedural Rules for Level 2 Mediation," explicitly states in large font, "COVERED CLAIMS ONLY." (D.I. 24, Ex. 2 at 10). Moreover, the first page of the DRP states that Level 2-Mediation or Level 3-Binding Arbitration is appropriate only "if the dispute is a covered claim." (D.I. 24, Ex. 2 at 4). In light of this caveat, the Court agrees with Plaintiffs.

The language in Article Thirteen does not "clearly and unmistakably" delegate the question of arbitrability. *AT&T Techs.*, 475 U.S. at 649. Article Thirteen applies only to "covered claims." (D.I. 24, Ex. 2 at 18). As such, Article Thirteen contains an implicit "carve out," and thus does not clearly and unmistakably commit all questions of arbitrability to the arbitrator. *See NASDAQ OMX Group, Inc. v. UBS, Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014) (holding that a "broad arbitration clause that the parties subjected to a carve-out provision" does not clearly and unmistakably delegate arbitrability.). "The parties could have written a provision expressly stating that all disputes concerning arbitrability" – like whether a claim was covered or not – "would be resolved by the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 323 (2d Cir. 2021); *cf. Bossé v. New York Life Ins. Co.*, 992 F.3d 20, 29 (1st Cir. 2021) (finding that the arbitrability question was delegated to an arbitrator where the clause explicitly mentioned questions of arbitrability.). The parties, however, did not do so. Instead, the parties decided that

disputes about arbitrability for covered claims would be delegated to the arbitrator. As such, the Court is "not empowered to re-write their agreement" and determine that the arbitrability of *all* claims are delegated to the arbitrator. *Archer & White Sales, Inc v. Henry Schein, Inc.*, 935 F.3d 274, 282 (5th Cir. 2019). Therefore, this Court, and not the arbitrator, will determine whether the arbitration agreement is valid and whether the instant claims are "covered claims."

B. <u>A Valid Arbitration Agreement Exists</u>

Here, there is no dispute that the arbitration agreement, the DRP, is a valid and enforceable contract. Plaintiff assented to the arbitration agreement via DocuSign on April 22, 2022;[3] and there is no basis to infer unconscionability. (D.I. 22 at 8 (citing D.I. 24, Ex. 1 (Signature Page))). Indeed, Plaintiff does not challenge the validity of the DRP, but instead argues that his claims do not fall within the scope of the DRP. (D.I. 26 at 5 (Plaintiff stating that "[he] agreed to arbitrate some claims, not all claims.")). "Absent a specific challenge to the validity of the arbitration clause specifically, the [C]ourt must treat [the arbitration agreement] as a valid and enforceable agreement." *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020). Accordingly, the Court determines the DRP is a valid and enforceable arbitration agreement. The Court next determines whether Plaintiff's claim falls within the scope of the arbitration agreement.

C. <u>The Parties Dispute Falls Within the Scope of the Arbitration Agreement</u>

Plaintiff argues that arbitration should not be compelled because "not all employment issues are subject to arbitration pursuant to the DRP." (D.I. 26 at 7). Plaintiff explains that the

---

[3] The Signature Page for Nelson's Employment Contract clearly and explicitly stated that "the Company uses a **Dispute Resolution Program ("DRP")** for all employment-related disputes, the last step of which is final and binding arbitration. The DRP will be a term and condition of your employment and your exclusive remedy for any covered claims you may have. By accepting employment with the company, you agree to submit all covered claims to the DRP." (D.I. 24, Ex. 1 (emphasis in original)).

6

DRP applies only to a specific list of enumerated "covered claims." (*Id.* at 8). Specifically, the DRP provides:

| COVERED CLAIMS | EXCLUDED CLAIMS |
|---|---|
| [. . .] Covered Claims are claims relating to or arising out of the employment relationship that:<br><br>A. [. . .]<br><br>B. the Employee may have against the Company and/or any individual employee who is acting within the scope of his or her employment with the Company, where the Employee alleges unlawful termination and/or unlawful or illegal conduct on the part of the Company including, but not limited to, the following:<br><br>[. . .]<br><br>(8) Claims of violation of public policy. | The following claims shall be excluded from DRP:<br><br>[. . .]<br><br>F. Claims that seek to establish, modify or object to the Company's policies or procedures, except claims alleging discriminatory application of such policies. |

(D.I. 24, Ex. 2 at 7).

Plaintiff asserts that his claim is not covered because it falls under the last category of excluded claims: "claims that seek to establish, modify, or object to the Company's policies or procedures, except those regarding discrimination." (D.I. 26 at 10). Plaintiff also asserts his claim is excluded because it (1) concerns the Company's policy, and (2) was not treated as a covered claim by Defendants. (*Id.* at 12-13). In contrast, Defendants contend that Plaintiff's claim is covered because it is a claim that "the Employee may have against the Company [. . .], where the Employee alleges unlawful termination and/or *unlawful or illegal conduct* on the part of the Company . . . ." (D.I. 24, Ex. 2 at 7 (emphasis added)). The Court agrees with Defendants.

7

Plaintiff's Amended Complaint asserts one count, "Violation of the FLSA 29 U.S.C. § 201, *et seq.*" (D.I. 17 ¶¶ 53-68). Specifically, Plaintiff alleges that Defendants violated, and continue to violate, the FLSA's overtime provisions. (*Id.* ¶¶ 60, 66). Although Plaintiff alleges that "Defendants implemented a *policy* in which it refused to pay any overtime to Plaintiff and others similarly situated," the crux of the Amended Complaint is that Defendants have acted, and are acting, illegally in violation of the FLSA. (*Id.* ¶ 36 (emphasis added)). Defendants' policy is relevant, but only to the extent that it supports Plaintiff's claim that Defendants have engaged in violations of the FLSA. (*See* D.I. 17 ¶ 48 ("[Defendants'] uniform policies and practices [ ] have violated [the Collective Members'] rights under the FLSA and its implementing regulations.")). In other words, the Court must necessarily find that Defendants acted illegally, in violation of the FLSA, to award Plaintiff his sought relief. Therefore, Plaintiff's claim falls squarely within the covered claims – the "Employee alleges . . . unlawful/illegal conduct on part of the Company." (D.I. 24, Ex. 2 at 7).

Furthermore, the Court does not find that Plaintiff's claim is excluded because Plaintiff does not "seek to establish, modify or object to the Company's policies or procedures." (D.I. 24, Ex. 2 at 7 ("Excluded Claims")). Rather, in his Prayer for Relief, Plaintiff seeks "a declaratory judgment that the practices complained of herein are *unlawful* under the FLSA;" "back pay damages (including unpaid overtime compensation) and prejudgment and post-judgment interest;" "liquidated damages;" and "litigation costs, expenses, and attorney's fees." (D.I. 17 at 11 (Prayer for Relief) (emphasis added)). In other words, Plaintiff asks the court for statutory and legal relief. Plaintiff's claim goes far beyond seeking to "establish, modify, or object" to Defendants' policy.

In a final effort, Plaintiff argues that his claim is excluded because "Defendants have not treated [it] as a covered claim." (D.I. 26 at 13). Plaintiff asserts that he was "not told by

8

management or human resources that his dispute was covered by the DRP, [and] Plaintiff was also not issued a 'final determination' from which he could proceed to subsequent levels for covered claims under the DRP." (D.I. 26 at 13). The Court, however, is not persuaded by Plaintiff's argument for two reasons. First, "[t]o submit a complaint under the DRP, an employee must complete and submit a DRP Notice of Dispute form." (D.I. 28 at 9 (citing D.I. 24, Ex. 2 at 7)). Yet, Plaintiff "never completed or submitted a DRP Notice of Dispute form." (D.I. 28 at 9). Accordingly, Defendants did not have an opportunity to treat Plaintiff's claim as covered or excluded under the DRP. (*Id.*). Second, Defendants alleged "treatment" of Plaintiff's claim does not alter the plain language of the parties' contract. The classification of covered versus excluded claims is not ambiguous. As such, the Court does not and cannot look to extrinsic evidence to infer that "the parties meant something other than what the contract says on its face." *Bohler-Uddeholm Am., Inc. v. Ellwood Group*, Inc., 247 F.3d 79, 96 (3d Cir. 2001) (explaining the parol evidence rule).

Therefore, in summary, the Court finds that Plaintiff's claim is within the scope of the DRP because it is a "covered claim." As a result, Plaintiff's claim must be arbitrated.

### D. The Arbitrator May Decide Whether the Collective Action Can Proceed

Last, Plaintiff asserts that "[e]ven if this Court determined that Plaintiff's claim should proceed to arbitration, the Court should not require Plaintiff to proceed individually" because the DRP does not bar collective actions. (D.I. 26 at 16). Plaintiff further explains that this approach would be consistent with the American Arbitration Association's position on class arbitrations. (*Id.*). In opposition, Defendants contend that Plaintiff Nelson's claims must be arbitrated on an individual basis because Anheuser-Busch has not explicitly agreed to arbitration on a collective basis. (D.I. 28 at 9). In other words, Defendants aver that a class arbitration may only move

forward if the arbitration agreement expressly contemplates class arbitration. (*See id.* at 11). Defendants are correct on this issue.

The Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). "This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.* at 685. Here, the DRP does not contain a provision discussing class arbitration or collective actions. (*See* D.I. 24, Ex. 2). Therefore, there is no contractual basis for concluding that Anheuser-Busch agreed to class arbitration. Like here, where a contract is silent regarding class arbitration, "the actual determination as to whether class action is prohibited is a question of interpretation and procedure for the arbitrator." *Quilloin v. Tenet HealthSystem, Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012). As a result, should Plaintiff wish, the arbitrator may decide whether the DRP precludes the class action. The Court, however, will not order Defendants to arbitrate collectively with Plaintiff *and* the class.

## V.     CONCLUSION

For the reasons explained above, the Court grants Defendants' Motion to Compel Individual Arbitration and Stay the Case (D.I. 21).[4] The Court will enter an Order consistent with the ruling in this Memorandum Opinion.

---

4   Defendants moved "to compel individual arbitration and stay, or in the alternative, [to] dismiss the case." (D.I. 22 at 1). The Court has granted Defendants' Motion to Compel. As a result, the Court will not address Defendants' alternative arguments for dismissal.